# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Deborah Henry,

               Plaintiff,

                        Case No. 1:20-cv-558-MLB

v.

Variety Wholesalers, Inc., et al.,

               Defendants.

_____/

## <u>OPINION & ORDER</u>

Plaintiff Deborah Henry sued Defendants Variety Wholesalers, Inc., ABC Corps. #1–3, and John Does #1–3 for premises liability.[1] (Dkt. 1-4.) Defendant Variety Wholesaler (hereinafter "Defendant") moves for summary judgment. (Dkt. 36.) The Court grants that motion.[2]

---

[1] In Plaintiff's complaint, she titles her count as "Negligence of Defendants," but all her allegations are framed as a premises liability claim. Plaintiff also treats her action as a premises liability claim throughout summary judgment briefing. The Court thus treats this as a premises liability case.

[2] In the light of the impermissibility of fictitious party pleading in federal court and the absence of specific allegations or evidence concerning the identity or actions of the ABC Corp. and John Doe defendants, those defendants are hereby dismissed from the actions without prejudice. *See Richardson v. Johnson*, 598 F.3d 738 (11th Cir. 2010).

# I.   Background[3]

## A.   Facts

Plaintiff alleges she slipped and fell on an oily residue, perhaps baby oil, in the Health and Beauty Aids ("HBA") aisle of the Austell, Georgia Maxway store on December 22, 2018.[4] (Dkts. 36-1 ¶ 1; 44-1 ¶ 1.)[5] She took roughly four or five steps down aisle before falling on the linoleum tiled floor. (Dkts. 36-1 ¶ 3; 44-1 ¶ 3.) Plaintiff had a clear view down the aisle. (Dkts. 36-1 ¶ 4; 44-1 ¶ 4.) There were no signs indicating the floor was wet.[6] (Dkts. 36-1 ¶ 10; 44-1 ¶ 10.) There were no employees in the aisle at the time. (Dkts. 36-1 ¶ 5; 44-1 ¶ 5.) The area was well lit

---

[3] The Court draws the following facts from Defendant's statement of material facts (Dkt. 36-1), Plaintiff's response to Defendant's statement of material facts and additional material facts (Dkt. 44-1), and Defendant's response to Plaintiff's statement of additional material facts (Dkt. 46). Additionally, as needed, the Court draws some facts directly from the record. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

[4] When asked how she knew the substance was "baby oil," Plaintiff testified that "it could have been some other oil" and "[she] should have said just oily." (Dkts. 36-1 ¶ 2; 44-1 ¶ 2; 37 at 75:24–76:10.)

[5] Plaintiff's cited evidence does not directly refute Defendant's fact. The Court thus deems this fact admitted. *See* LR 56.1(B)(2)(a)(2), NDGa.

[6] Defendant contends that at trial, there will be a dispute of fact as to whether wet floor signs were present. (Dkt. 36-1 ¶ 10 n.1.) But at summary judgment, the Court accepts Plaintiff's version of events: there were no signs.

with typical commercial lighting.  (Dkts. 36-1 ¶ 6; 44-1 ¶ 6.)  No store camera captured the incident.  (Dkts. 36-1 ¶ 9; 44-1 ¶ 9.)  After taking four or five steps in a straight line, Plaintiff slipped and fell, landing on her rear end.  (Dkts. 36-1 ¶ 7; 44-1 ¶ 7.)  Plaintiff never saw anything on the floor, even after her fall. [7]  (Dkts. 36-1 ¶ 8; 44-1 ¶ 8.)  She simply "felt" a residue on the floor.  (*Id.*)  Specifically, she testified "[i]t felt like oil. But I didn't see anything."  (Dkt. 37 at 59:9–10.)  While on the floor, she could feel "it" on her hands, the floor, and her shoes; she could not get up because her feet were sliding.  (*Id.* at 58:21–59:3.)  She agreed that whatever was on the floor was clear, colorless, and not in a puddle—it was a greasy residue.  (*Id.* at 59:15–24.)

Juell Young, one of Defendant's store managers, heard someone had fallen.  (Dkts. 36-1 ¶ 11; 44-1 ¶ 11; 38 at 7:18.)  She went to Ms. Young and got her a chair.  (*Id.*)  Ms. Young sat there for ten or fifteen

---

[7] Defendant used the word "observed" rather than "saw."  (Dkt. 36-1 ¶ 8.) Plaintiff objected to Defendant's statement and characterization of observation as only being related to sight.  (Dkt. 44-1 ¶ 8.)  She contends she "observed, using her sense of touch and smell."  (*Id.*)  Plaintiff cites no evidence to indicate she saw the substance before or after the incident.

minutes.[8]  (*Id.*)  She testified that another employee mopped the aisle. (Dkt. 37 at 68:11–16.)

During the holiday season, Mr. Cunningham, a contract maintenance worker, was employed at the relevant store to clean windows, bathrooms, baseboards, and anything else that needed cleaning.  (Dkts. 36-1 ¶ 12; 44-1 ¶ 12; 38 at 19:17–20 ("I had a contract worker there at the time cleaning windows, bathrooms, baseboards, anything that needed to be cleaned around the store.").)  On December 22, 2018, before Plaintiff's slip and fall, Ms. Young observed a spill in the HBA aisle and had Mr. Cunningham clean it up.[9]  (Dkts. 36-1 ¶ 13; 44-1 ¶ 13.)  Mr. Cunningham brought two wet floor signs and a mop bucket

---

[8] There is a fact issue as to whether Plaintiff continued to shop or made a purchase after her incident.  (Dkts. 36-1 ¶ 11; 44-1 ¶ 11; 46 ¶ 11.)  The dispute of fact is immaterial.  Plaintiff also testified in her deposition that another customer helped her up and that she waited for ten minutes before a store employee arrived.  (Dkt. 37 at 61:20–64:25.)  But, she did not dispute Defendant's asserted fact that Ms. Young brought her a chair in which she sat for ten to fifteen minutes.  (Dkts. 36-1 ¶ 11; 44-1 ¶ 11.)  These facts are also immaterial as to liability.

[9] Defendant's policies and procedures for maintaining, inspecting, and cleaning the floor on December 22, 2018 included the floor being swept and cleaned daily.  (Dkt. 39 at 9:25, 10:24–25.)  Defendant mopped spills as necessary and had a monthly maintenance vendor to mop and clean the floor.  (*Id.* at 10:25–11:1, 11:24–25.)  It also had a daily inspection program where employees were to inspect safety issues throughout the store seven times a day.  (*Id.* at 11:1–3.)

and placed the wet floor signs in the HBA aisle.  (Dkts. 36-1 ¶ 14; 44-1 ¶ 14.)  Ms. Young placed a third yellow wet floor sign in the HBA aisle. (Dkts. 36-1 ¶ 15; 44-1 ¶ 15.)  Ms. Young watched Mr. Cunningham put down "cat litter," a substance to absorb certain kinds of spills, and clean the area about fifteen to thirty minutes before Plaintiff's incident.  (Dkts. 36-1 ¶¶ 16–17; 44-1 ¶¶ 16–17; 38 at 38:4–7, 60:9–11.)  Ms. Young also found a half empty bottle of baby oil on the floor with a broken top.  (Dkts. 36-1 ¶ 16; 44-1 ¶ 16.)  She placed the bottle in a bag and took the bottle to the damaged merchandise section of the stockroom.  (*Id.*)

After Mr. Cunningham cleaned the spill, Ms. Young saw that the floor was completely clean and free of oil or any other slippery substance. (Dkts. 36-1 ¶ 17; 44-1 ¶ 17.)  She did this fifteen to twenty minutes **before** Plaintiff's incident.  (*Id.*)  Ms. Young had no knowledge of any oil, liquid, or foreign substance on the floor in the area of the incident when Plaintiff fell.  (Dkts. 36-1 ¶ 18; 44-1 ¶ 18.)  Ms. Young did not witness Plaintiff's incident and was not in the aisle at the time.  (Dkts. 36-1 ¶ 19; 44-1 ¶ 19.)

Plaintiff Deborah Henry sued Defendants Variety Wholesalers, Inc., ABC Corps. #1–3, and John Does #1–3 for premises liability in the

State Court of Cobb County.  (Dkt. 1-4.)  Defendant removed.  (Dkt. 1.)
Defendant now moves for summary judgment.  (Dkt. 36.)

## II.    Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a court
"shall grant summary judgment if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is
genuine if the evidence would allow a reasonable jury to find for the
nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
(1986).  And a fact is "material" if it is "a legal element of the claim under
the applicable substantive law which might affect the outcome of the
case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The party moving for summary judgment bears the initial burden
of showing the court, by reference to materials in the record, that there
is no genuine dispute as to any material fact.  *Hickson Corp. v. N.
Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp.
v. Catrett*, 477 U.S. 317, 323 (1986)).  A moving party meets this burden
by " 'showing'—that is, pointing out to the district court—that there is an
absence of evidence to support the nonmoving party's case."  *Celotex*, 477

6

U.S. at 325.  The movant, however, need not negate the other party's claim.  *Id.* at 323.  In determining whether the moving party has met this burden, the court must view the evidence and all reasonable factual inferences in the light most favorable to the party opposing the motion.  *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmoving party then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Ultimately, there is no genuine dispute for trial when the record as a whole could not lead a rational trier of fact to find for the nonmoving party.  *Id.*  But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247–48 (emphasis in original).  The court, however, resolves all reasonable doubts about the facts in favor of the non-movant.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)

## III.   Discussion

### A.   Ms. Young's Credibility

In Plaintiff's response, she contends summary judgment should be denied because the evidentiary record is rife with contradictions pertaining to material facts.  (Dkt. 44 at 4.)  She also argues summary judgment is precluded because the credibility of Defendant's "primary witness" is at issue.  (*Id.* at 8.)  She says "Ms. Young's version of events . . . simply does not make sense in terms of logic or timing, and it contradicts the information contained within the documentary evidence in the record."  (*Id.* at 2.)  Plaintiff also "objects" to several of Defendant's facts "as Plaintiff denies the truthfulness and voracity (sic) of Ms. Young." (Dkt. 44-1 at 4–6.)   Local Rule 56.1(B) requires a nonmovant to (1) directly refute the movant's fact with concise responses supported by specific citations to evidence; (2) state a valid objection to the *admissibility* of the movant's facts; or (3) point out that the movant's citation does not support the movant's fact or that the movant's fact is not material or failed to comply with the local rule.   *See* LR 56.1(B)(2)(a)(2), NDGa (emphasis added).  Although Plaintiff "objects" to Defendant's facts, she never questions their admissibility.  She also does

not refute Defendant's operative facts from Ms. Young with citations to evidence or point out that Defendant's citations do not support its facts. Plaintiff's failure to comply with Local Rule 56.1 is not a mere technicality. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). The Eleventh Circuit has noted that it "protects judicial resources by making the parties organize the evidence rather than leaving the burden upon the district judge." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (internal quotation marks omitted).

Plaintiff's "objections" to Ms. Young's credibility are also unavailing. Plaintiff contends that Ms. Young's testimony contradicts Plaintiff's testimony four times, making Ms. Young not credible. (Dkt. 44 at 4–5, 8–9.) First, Ms. Young testified that she and Mr. Cunningham placed three wet floor signs in the HBA aisle approximately thirty minutes before the accident. (Dkt. 38 at 20:3–12, 29:9–30:5, 38:4–7.) Plaintiff calls the credibility of Ms. Young's testimony into question because it contradicts her testimony that she did not see any wet floor signs in the aisle. (Dkt. 37 at 55:3–9.) The Court acknowledges there is a dispute on whether there were wet floor signs in the aisle, but this fact is not material and thus will not affect the Court's ruling.

9

Second, Ms. Young testified that, about thirty minutes before the fall, Ms. Cunningham cleaned up a baby oil spill in the subject aisle. (Dkt. 38 at 20:3–12, 38:4–7.)  Plaintiff questions Ms. Young's credibility because "the documents do not reflect that inspection occurred at all." (Dkt. 44 at 4.)  Plaintiff refers to the safety inspection calendar on which employees record the time and person who inspects safety issues throughout the store every three hours.  (Dkts. 45; 39 at 11:1–15; 38 at 14:20–15:2.)  The safety calendar has no signatures for the first two inspections on the date of the subject incident.[10]  (Dkt. 45.)  Plaintiff, however, cites nothing to show this calendar would be marked if an employee happens to see a safety hazard not while doing an incremental inspection.[11]  Ms. Young testified that the safety calendar "is a calendar where, once we come into the store, we have seven separate times that we are supposed to inspect the store throughout the day, *as well as* our

---

[10] The Court notes Defendant's 30(b)(6) representative, Mark Milliner, testified that he could not say "that the proper inspection procedures were carried out on the date of the incident." (Dkt. 39 at 51:20–25.)  Even if this is a fact issue, it is immaterial.

[11] Ms. Young also testified that the reason there is no signature in the second slot is because "[i]t may have just been overlooked at the time." (Dkt. 38 at 18:9–12.)  And the third slot inspection, which was signed, could have been about 11:00.  (*Id.* at 53:2–10.)

normal – you know, we're walking the store as well, so if you see anything." (Dkt. 38 at 14:20–24 (emphasis added).)

Third, Plaintiff contends that "with no knowledge whatsoever of the clean-up that had taken place approximately a half an hour before she fell, immediately identified that substance upon which she slipped and fell as baby oil." (Dkt. 44 at 5.)  According to Plaintiff, Ms. Young "thinks Plaintiff did not slip and fall on anything at all, because that area was (allegedly) clean and dry by the time of the fall. However, there is a fatal flaw to this argument Plaintiff says: *How would Plaintiff have known to say that she slipped and fell on baby oil if there was no evidence that a baby oil spill had been cleaned up already?*" (*Id.* at 10 (emphasis in original).)  Plaintiff cites to a portion of Ms. Young's deposition in which Ms. Young testified there was baby oil on the shelf in the subject aisle and she thought Plaintiff was guessing the substance was baby oil. (Dkts. 44 at 10; 38 at 63:13–18, 64:4–5.)  The Court sees no reason for this testimony to create a question of credibility.  It may support finding that, despite Ms. Young's efforts to clean the aisle, baby oil remained on the floor.  But that does not preclude summary judgment.

11

Finally, Plaintiff contends Ms. Young stated she took photographs of the subject aisle approximately fifteen to twenty minutes after the subject incident. (Dkt. 44 at 8–9.) Plaintiff, however, provides no citation to Ms. Young testifying photographs were taken at that time. Rather, Plaintiff provides a citation to Ms. Young's deposition in which defense counsel states a photograph was taken at 1:42 p.m. (Dkts. 44 at 8; 38 at 23:17.) Ms. Young testified that about fifteen to twenty minutes after Plaintiff left the aisle, she took a picture. (Dkt. 38 at 34:7–15.)

### B.    Premises Liability

In *Robinson v. Kroger Co.*, 493 S.E.2d 403 (Ga. 1997), the Georgia Supreme Court reviewed years of Georgia case law from slip and fall premises liability appeals to address what it described as a "pendulum-like" swing back and forth in Georgia law between cases accenting an owner's obligation to keep its premises safe and those accenting an invitee's obligations to exercise due care for his or her own safety. *Id.* at 405. The Georgia Supreme Court ultimately "reaffirmed" that, to recover for injuries sustained in a slip-and-fall action, an invitee like Plaintiff must prove both "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of

the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Id.* at 414.

Defendant moved for summary judgment on the grounds: (1) there is no admissible evidence it had actual knowledge and (2) Plaintiff cannot meet her burden to show it had constructive knowledge. (Dkt. 36-2 at 11–12.)

### 1.    Actual Knowledge

Plaintiff alleges in her complaint that "Defendants had actual and/or constructive knowledge of the subject baby oil on the floor and the hazard it posed on the property." (Dkt. 1-4 ¶ 15.) And "[a]t least one Maxway employee was aware of the presence of the hazardous substance in question prior to Plaintiff slipping and falling." (*Id.* ¶ 10.) The undisputed evidence shows when Ms. Young left the HBA aisle thirty minutes before Plaintiff's incident, the prior baby oil spill had been cleaned up and there was no oil, liquid, or any foreign substance on the floor. (Dkt. 36-1 ¶¶ 13, 17–18.) Ms. Young thought the spill was cleaned up. It is also undisputed that there were no employees in the HBA aisle at the time of the incident. (Dkts. 36-1 ¶ 5; 44-1 ¶ 5.) *See Medders v. Kroger Co.*, 572 S.E.2d 386, 387 (Ga. Ct. App. 2002) ("[I]t is undisputed

that there were no Kroger employees in the immediate area when [the plaintiff] fell. Therefore, she cannot show that Kroger had actual knowledge of the hazard."). The undisputed evidence shows the employees identified a hazard in the aisle earlier in the day, took action to clean it up, and believed any hazard had been removed. Plaintiff presents no evidence to contradict this. Defendant is thus entitled to summary judgment based on its lack of actual knowledge.

### 2.   Constructive Knowledge

Plaintiff also alleges Defendant had constructive knowledge of the alleged hazard. (Dkt. 1-4 ¶ 15.) Defendant, however, argues Plaintiff cannot meet her burden to show it had constructive knowledge of the alleged hazard. (Dkt. 36-2 at 12.) To show constructive knowledge, a plaintiff must present evidence either "that (1) an employee of the proprietor was in the immediate area of the hazard and could have easily seen and removed it; or (2) the hazard had been present long enough that the proprietor could have discovered it through reasonable inspection procedures." *Lomax v. Kroger Co.*, 824 S.E.2d 629, 631 (Ga. Ct. App. 2019); *see also J.H. Harvey Co. v. Reddick*, 522 S.E.2d 749, 752 (Ga. Ct. App. 1999). Under the second method, such constructive knowledge

> may be inferred when there is evidence that the owner lacked
> a reasonable inspection procedure. In order to prevail at
> summary judgment based on lack of constructive knowledge,
> the owner must demonstrate not only that it had a reasonable
> inspection program in place, but that such program was
> actually carried out at the time of the incident.

*Shepard v. Winn Dixie Stores, Inc.*, 527 S.E.2d 36, 38 (Ga. Ct. App. 1999).

Under Georgia law, however, "[i]t is well settled that a proprietor is under

no duty to patrol the premises continuously in the absence of facts

showing that the premises are unusually dangerous." *Mazur v. Food

Giant, Inc.*, 359 S.E.2d 178, 179 (Ga. Ct. App. 1987); *see also Blake v.

Kroger Co.*, 480 S.E.2d 199, 202 (Ga. Ct. App. 1996) ("We know of no case

or rule which requires a proprietor or its employees to crawl on the floor

at regular intervals to discover and remove every otherwise hidden or

invisible hazard.").  But regardless of any inspection policy, when "a

proprietor has shown that an inspection occurred within a brief period

prior to an invitee's fall, [Georgia courts hold] that the inspection

procedure was adequate as a matter of law" and may grant summary

judgment to the proprietor.  *Medders*, 572 S.E.2d at 388 (quoting

*Matthews v. The Varsity*, 546 S.E.2d 878, 881 (Ga. Ct. App. 2001)).

The undisputed evidence shows the area of the incident was cleaned

by Mr. Cunningham and inspected by Ms. Young shortly before the

15

incident.  (Dkt. 36-1 ¶ 17.)  Defendants believed the area of the incident was clean and free of oil or any other substance thirty minutes before Plaintiff's incident.[12]  (*Id.*)  Under Georgia law, Defendant is entitled to summary judgment since it has shown an inspection occurred within a brief period prior to Plaintiff's fall.  *See Medders*, 572 S.E.2d at 388; *Wallace v. Wal-Mart Stores*, 612 S.E.2d 528, 531 (Ga. Ct. App. 2005); *Hopkins v. Kmart Corp.*, 502 S.E.2d 476, 478 (Ga. Ct. App. 1998) (finding the defendant's manager's testimony that he checked the aisle where the plaintiff fell thirty minutes before her fall as sufficient to carry the defendant's initial burden of showing it exercised reasonable care in inspecting the premises).  Plaintiff focuses on Defendant's safety calendar, contending the first two slots on the day of the incident were not signed.  (Dkt. 44 at 4.)  "Regardless of the adequacy of any inspection

---

[12] During Ms. Young's deposition, she testified "the incident may have happened maybe 30 minutes or so after we cleaned the spill up."  (Dkt. 38 at 37:24–38:7.)  She also testified that a cashier informed her "maybe 15, 20 minutes" after she took the broken bottle to the stockroom that "someone had fell in the aisle."  (*Id.* at 20:21–21:3.)  In Ms. Young's second declaration, she testified that she watched Mr. Cunningham clean the spill approximately 15 to 20 minutes before Plaintiff's incident and she saw the floor was clean and free of oil 15 to 20 minutes before Plaintiff's incident.  (Dkt. 36-7 ¶ 2.)  Whether Ms. Young's inspection occurred thirty, twenty, or fifteen minutes before Plaintiff's incident is immaterial.

program, when an owner shows that an inspection occurred within a brief period of time prior to an invitee's fall, the inspection procedure was adequate as a matter of law and defeats an invitee's negligence action." *Mucyo v. Publix Super Mkts., Inc.*, 688 S.E.2d 372, 375 (Ga. Ct. App. 2009).  It is irrelevant whether Defendant can demonstrate compliance with the entirety of its inspection procedures since Ms. Young's undisputed testimony establishes Defendants believed the floor was free and clear of oil or any foreign substance thirty minutes before the incident.

Perhaps Plaintiff did slip on baby oil that remained present from the previous spill.  But even if that is true, it is undisputed Defendant's employees saw baby oil earlier in the day, thought they cleaned it all up, and Ms. Young inspected the area and saw the floor was clear of oil.  The undisputed evidence does not allow for the possibility of knowledge or constructive knowledge, even though it may allow a reasonable jury to conclude Defendants made a mistake.  *See Blake*, 480 S.E.2d at 202 (Ga. Ct. App. 1996) ("We know of no case or rule which requires a proprietor or its employees to crawl on the floor at regular intervals to discover and remove every otherwise hidden or invisible hazard."); *F.W. Woolworth Co.*

*v. Graham*, 357 S.W. 574, 574–75 (Tex. Civ. App. 1923) (affirming judgment entered on verdict in the defendant's favor in action for injuries sustained when the plaintiff slipped and fell in area where it appeared another customer had dropped a bottle of liquid, the defendant's manager saw the bottle and called a porter to clean it up, and the porter swept and mopped the area, and evidence that the place where the plaintiff fell was wet was supplied only by the plaintiff's testimony).  The undisputed evidence shows Defendants believed they cleaned up the entire baby oil spill.  The Court will not require Defendants' employees to thoroughly clean up a spill and subsequently crawl on the floor to ensure the area is completely free from foreign substances.

Plaintiff also points to no evidence creating a genuine issue of material fact that the hazard had been on the floor long enough for Defendants to have discovered it with a reasonable inspection.  *See Hopkins*, 503 S.E.2d at 478 ("The plaintiff must show that the substance was on the floor for a length of time sufficient for knowledge of it to be imputed to the defendant.")  There is no evidence Defendants knew the hazard was present thirty minutes before the fall when Ms. Young inspected the area after the cleaning and observed the floor to be free and

clear of oil or any substance. *See Kroger Co. v. Brooks*, 500 S.E.2d 391, 396 (Ga. Ct. App. 1998) ("[I]n the absence of evidence [that] a reasonable inspection would have discovered the foreign substance, no inference can arise that defendant's failure to discover the [defect] was the result of its failure to inspect.")  Plaintiff also points to no evidence showing how the oil got on the floor, how long it had been there before her fall, or that it was visible for any amount of time before the fall.  *See Kmart Corp. v. McCollum*, 659 S.E.2d 913, 916 (Ga. Ct. App. 2008) (finding inspection procedure adequate as matter of law when the plaintiff could point to no evidence "to show that the liquid had been there long enough that Kmart should have discovered and removed it during a reasonable inspection").  Plaintiff has thus failed to show Defendant failed to exercise reasonable care in inspecting the premises.

Plaintiff also points to no evidence creating a genuine issue of material fact suggesting an employee of Defendant was in the area of the hazard.  Again, Ms. Young testified that she inspected the area no more than thirty minutes before Plaintiff fell.  (Dkt. 38 at 37:24–38:7.)  The undisputed evidence shows that no employee was in the area after the final inspection but before she fell.  It is also undisputed that there were

no employees in the HBA aisle at the time the subject incident occurred. (Dkts. 36-1 ¶ 5; 44-1 ¶ 5.)  Plaintiff thus presents no evidence to establish Defendant's constructive knowledge of the alleged hazard.  *See Ginn v. Grothere*, 469 S.E.2d 876, 878 (Ga. Ct. App. 1996) (explaining that "a defendant can establish *lack* of actionable constructive knowledge by evidence of compliance with reasonable inspection . . . procedures" (emphasis in original) (internal quotation marks omitted)); *Warberg v. Saint Louis Bread Co.*, 565 S.E.2d 561, 564 (Ga. Ct. App. 2002) (finding that not only must an employee be in the vicinity, but additionally there must be a finding that the defendant's employee had the opportunity to discover and remove the hazard, "which can only be shown by evidence that the hazard existed for a length of time sufficient for the defendant to discover the hazard and remove it").

The Court's conclusion is in line with decisions of Georgia courts consistently holding that inspections such as Ms. Young's, conducted within thirty minutes before a fall, are reasonable as a matter of law. *See, e.g.*, *Walmart Stores E. L.P. v. Benson*, 806 S.E.2d 25, 30 (Ga. Ct. App. 2017) (holding adequate as matter of law an inspection of the store aisle conducted less than thirty minutes before a fall); *Flanagan v.*

*Quiktrip Corp.*, No. 1:13-CV-3836, 2015 WL 3472957, at *9 (N.D. Ga. June 1, 2015) ("Georgia courts have held that inspections conducted within thirty (30) minutes before the injury-causing event were adequate as a matter of law.") (collecting cases); *Hopkins*, 502 S.E.2d at 478–79 (finding inspection conducted thirty minutes before fall was adequate as matter of law); *Ledford v. Wal-Mart Stores E., LP*, No. 3:09-cv-21, 2010 WL 11493530, at *3–4 (N.D. Ga. Jan. 12, 2010) (granting summary judgment to the defendant where store conducted periodic inspections and area of fall was inspected within thirty minutes before fall); *Wallace*, 612 S.E.2d at 531 (finding inspection conducted 15–20 minutes before fall adequate as a matter of law) (collecting cases).  The Court thus holds Defendant's inspection of the area shortly before the incident adequate and reasonable as a matter of law.  And because the Court finds that Defendant had neither actual nor constructive knowledge of the alleged hazard, Plaintiff's claim under O.C.G.A. § 51-3-1 must fail.[13]  The Court grants Defendant's motion for summary judgment.

---

[13] Because the Court finds Plaintiff has failed to show that Defendant had actual or constructive knowledge of the hazard, the Court need not decide the second issue of whether Plaintiff exercised ordinary care for her own safety.  *See Medders*, 572 S.E.2d at 378 (affirming grant of summary judgment on basis of no actual or constructive knowledge).

**IV.  Conclusion**

The Court **GRANTS** Defendant Variety Wholesalers, Inc.'s Motion for Summary Judgment (Dkt. 36) and **DISMISSES** Plaintiff's complaint against Defendants.

**SO ORDERED** this 23rd day of August, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE